UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DENA K. KIRCHOFF,

　　　　　　　　Plaintiff,

　　　v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security.

　　　　　　　　Defendant.

CASE NO. 3:14-CV-05824-KLS

ORDER AFFIRMING DEFENDANT'S
DECISION TO DENY BENEFITS

　　　　Plaintiff has brought this matter for judicial review of defendant's denial of her

application for disability insurance and supplemental security income ("SSI") benefits. Pursuant

to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties

have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing

the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth

below, defendant's decision to deny benefits should be affirmed.

FACTUAL AND PROCEDURAL HISTORY

　　　　On January 20, 2010, plaintiff filed an application for disability insurance benefits and

1   SSI benefits, alleging in both applications she became disabled beginning March 15, 2009. *See*

2   Dkt. 11, Administrative Record ("AR") 10. Those applications were denied upon initial

3   administrative review on June 5, 2010 and on reconsideration on August 3, 2010. *See id.* A

4   hearing was held before an administrative law judge ("ALJ") on January 20, 2012, at which

5   plaintiff, represented by counsel, appeared and testified. *See* AR 87. In a decision dated March 7,

6   2012, the ALJ determined plaintiff to be not disabled. *See* AR 131. However, Plaintiff's request

7   for review of the ALJ's decision was granted by the Appeals Council on September 27, 2013,

8   which ordered the case remanded for additional findings concerning plaintiff's claimed mental

9   impairments at step two and for further development of the record. AR 150-153.

10       A second hearing was held before a different ALJ on January 23, 2014, at which plaintiff,

11   represented by counsel, appeared and testified, as did Joseph Moisan, Ph.D., a vocational expert.

12   *See* AR 46. In a decision dated May 6, 2014, the ALJ again determined plaintiff to be not

13   disabled. *See* AR 7. Plaintiff's second request for review of the ALJ's decision was denied by the

14   Appeals Counsel on August 13, 2014, making that decision the final decision of the

15   Commissioner of Social Security (the "Commissioner"). *See* AR 1; 20 C.F.R. § 404.981, §

16   416.1481. On October 17, 2014 plaintiff filed a complaint in this Court seeking judicial review

17   of the Commissioner's final decision. *See* Dkt. 1, 3. The administrative record was filed with the

18   Court on April 7, 2015. *See* Dkt.11. The parties have completed their briefing, and thus this

19   matter is now ripe for the Court's review.

20       Plaintiff argues defendant's decision to deny benefits should be reversed and remanded

21   for the immediate award of benefits, or in the alternative for further proceedings, because the

22   ALJ erred: (1) in evaluating the medical evidence in the record; (2) in discounting plaintiff's

23   credibility; (3) in rejecting the lay witness evidence in the record; (4) in assessing plaintiff's

24

1  residual functional capacity; and (5) in finding her to be capable of performing other jobs

2  existing in significant numbers in the national economy. For the reasons set forth below, the

3  undersigned disagrees that the ALJ erred in determining plaintiff to be not disabled, and

4  therefore this matter must be affirmed.

5                                    <u>DISCUSSION</u>

6          The determination of the Commissioner that a claimant is not disabled must be upheld by

7  the Court, if the "proper legal standards" have been applied by the Commissioner, and the

8  "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*,

9  785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Commissioner of Social Security Admin.*,

10  359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991)

11  ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal

12  standards were not applied in weighing the evidence and making the decision.") (citing *Brawner*

13  *v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987)).

14          Substantial evidence is "such relevant evidence as a reasonable mind might accept as

15  adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation

16  omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if

17  supported by inferences reasonably drawn from the record."). "The substantial evidence test

18  requires that the reviewing court determine" whether the Commissioner's decision is "supported

19  by more than a scintilla of evidence, although less than a preponderance of the evidence is

20  required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence

21  admits of more than one rational interpretation," the Commissioner's decision must be upheld.

22  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence

23  sufficient to support either outcome, we must affirm the decision actually made.") (quoting

24

1  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

2  I.      The ALJ's Step Two Determination

3        Defendant employs a five-step "sequential evaluation process" to determine whether a

4  claimant is disabled. *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found

5  disabled or not disabled at any particular step thereof, the disability determination is made at that

6  step, and the sequential evaluation process ends. *See id.* At step two of the evaluation process,

7  the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520, § 416.920. An

8  impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical

9  abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c);

10 *see also* Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are

11 those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b), § 416.921(b);

12 SSR 85- 28, 1985 WL 56856, *3.

13       An impairment is not severe only if the evidence establishes a slight abnormality that has

14 "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL

15 56856 *3; *see also Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *Yuckert v. Bowen*, 841

16 F.2d 303, 306 (9th Cir.1988).  Plaintiff has the burden of proving that her "impairments or their

17 symptoms affect her ability to perform basic work activities." *Edlund v. Massanari*, 253 F.3d

18 1152, 1159-60 (9th Cir. 2001); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998).  The step two

19

20 [1] As the Ninth Circuit has further explained:

21        . . . It is immaterial that the evidence in a case would permit a different conclusion than that
        which the [Commissioner] reached. If the [Commissioner]'s findings are supported by
        substantial evidence, the courts are required to accept them. It is the function of the
22      [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may
        not try the case de novo, neither may it abdicate its traditional function of review. It must
23      scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are
        rational. If they are . . . they must be upheld.

24 *Sorenson*, 514 F.2d at 1119 n.10.

inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. *See Smolen*, 80 F.3d at 1290.

Plaintiff claims the ALJ failed to classify several of her medical impairments as severe impairments, including migraine headaches, peroneal neuropathy, bilateral finger numbness, right shoulder degenerative joint disease, depression, anxiety, and pain disorder. Plaintiff concedes the ALJ's alleged failure to classify these specific impairments as severe did not cause any harm at step two, as step two was resolved in plaintiff's favor and the ALJ proceeded to the subsequent steps in the analysis. Instead, plaintiff claims the ALJ's failure to find these impairments severe necessarily meant the ALJ failed "to include in her residual functional capacity assessment all of the limitations caused by all of these impairments." Dkt. 21, p. 2.

However, the record contains substantial evidence in support of the ALJ's step two findings. For instance, while plaintiff was diagnosed with peroneal neuropathy, electrodiagnostic testing in December, 2009 revealed only mild abnormalities. *See* AR 427. Subsequent review by plaintiff's primary care physician revealed only slightly positive denervation. *See* AR 511. Clinical findings were also inconsistent with plaintiff's claims of hand numbness. *See* AR 14, 530, 637. Plaintiff's migraines were controlled through medication, specifically ibuprofen, and the medical record is inconsistent with plaintiff's claims concerning the frequency and intensity of her headaches. *See* AR 76-78, 671, 674.

Many of plaintiff's other claimed physical impairments, such as hypertension, right shoulder degenerative joint disease, COPD, and idiopathic thrombocytopenic purpura, appear sporadically throughout the medical records, but the record does not reflect more than occasional, minimal treatment for these impairments, nor does the record reflect any limitations from these impairments lasting for more than a minimal duration. *See, e.g.*, AR 351, 489, 656-

67, 675. In addition, the ALJ notes plaintiff testified her past mental health problems would not be a barrier to employment, absent being placed in "a traumatic situation." AR 15, 56.[2] Most importantly, plaintiff does not identify, nor does the record reflect, any limitations or restrictions which were either not included in the residual functional capacity or were not explicitly considered and discredited by the ALJ. *See* AR 18.[3]

II.      The ALJ's Evaluation of the Medical Evidence in the Record

        The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Commissioner of the Social Security Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

        In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

---

[2] Specifically, plaintiff testified that she previously had been "attacked" and "so if it was something that I felt threatened I would say that then it would affect me, otherwise I don't believe it would at all." AR 56.

[3] Plaintiff argues the ALJ should have adopted the previous ALJ's finding that her peroneal neuropathy and bilateral finger numbness were severe impairments. However, the Court finds any error in the current ALJ's failure to find those impairments to be severe harmless, as the previous ALJ, despite finding them to be severe, assigned plaintiff the same exertional limitations. *See* AR 18, 136; *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision."); *Stout v. Comm'r, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); *see also Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (any error in ALJ's failure to consider plaintiff's impairment at step two harmless, because ALJ did not err in evaluating plaintiff's impairments at later steps).

1  stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences

2  "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may

3  draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881

4  F.2d 747, 755, (9th Cir. 1989).

5        A treating physician's opinion will be given controlling weight if it is "well-supported by

6  medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

7  the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527; *Orn v. Astrue*, 495

8  F.3d 625, 631 (9th Cir. 2007). If a treating physician's opinion is not given controlling weight,

9  the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of

10 either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even

11 when a treating or examining physician's opinion is contradicted, that opinion "can only be

12 rejected for specific and legitimate reasons that are supported by substantial evidence in the

13 record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or

14 her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation

15 omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence

16 has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield*

17 *v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

18        In general, more weight is given to a treating physician's opinion than to the opinions of

19 those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need

20 not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and

21 inadequately supported by clinical findings" or "by the record as a whole." *Batson v.*

22 *Commissioner of Social Security Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas*

23 *v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th

24

1   Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a

2   nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may

3   constitute substantial evidence if "it is consistent with other independent evidence in the record."

4   *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

5       A.  Paul A. Surette, M.S., P.A.-C

6       In June, 2009, plaintiff's physician assistant, Paul Surette, M.S., P.A.-C., issued plaintiff

7   a work excuse, in which he opined plaintiff's ongoing medical appointments would "temporarily

8   limit her ability to participate in work duties intermittently," and noted this was not expected to

9   be a long-term issue. AR 439. In November, 2009, Mr. Surette again issued plaintiff a work

10  excuse, requesting she be placed on limited work duty, and specifically excusing her from

11  "lifting, squatting, running, walking, pushing, pulling, or climbing." AR 440.

12      As Mr. Surette is not considered an accepted medical source, the ALJ was only required

13  to provide germane reasons for discounting his testimony. *See* 20 C.F.R. § 404.1513(a) and (d);

14  *Turner v. Comm'r of Soc.Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) The ALJ gave little

15  weight to Mr. Surette's opinions for several germane reasons. First, the ALJ found insufficient

16  support in the record for the opined restrictions. *See* AR 29. The ALJ observed that both work

17  excuses were prepared without a concomitant physical examination, and notes that Mr. Surette's

18  actual examinations included instructions materially inconsistent with his opined limitations. *Id.*

19  For example, plaintiff was examined by Mr. Surette in July of 2010, the examination closest to

20  the November 2010 work excuse. AR 549-550. At the exam, Mr. Surette found plaintiff moved

21  all extremities well and that she had an intact gait. *See id.* He also recommended plaintiff "walk,

22  30 minutes each day, at a relatively quick pace." AR 552. The ALJ properly noted there was

23  nothing in the record establishing "any intervening worsening of [plaintiff's] symptoms to justify

24

1   a complete ban on exertional and postural activities, including walking."[4] AR 29.

2         Due to the inconsistencies between Mr. Surette's clinical findings and the work excuses

3   he issued, the ALJ concluded limitations Mr. Surette assessed were based solely on plaintiff's

4   subjective complaints of pain. AR 29. In light of the ALJ's adverse credibility analysis,

5   discussed below, this was proper. *See Morgan*, 169 F.3d at 602 ("A physician's opinion of

6   disability 'premised to a large extent upon the claimant's own accounts of his symptoms and

7   limitations' may be disregarded where those complaints have been 'properly discounted.'")

8   (quoting *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir.1989)). Second, the ALJ found that

9   subsequent to Mr. Surette's work excuses, the plaintiff's clinical findings improved significantly

10   "approximately a year after the alleged onset date." AR 30; *see also Tackett v. Apfel*, 180 F.3d

11   1094, 1098 (9th Cir. 1999) (claimant has burden of proving he or she suffers from medically

12   determinable impairment that can be expected to result in death or that has lasted or can be

13   expected to last for continuous period of not less than twelve months).  This too is a germane

14   reason for discounting Mr. Surette's opinion. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

15         B. <u>Vincent Phillips, M.D.</u>

16         Plaintiff's treating physician, Vincent Phillips, M.D., provided opinions concerning

17   plaintiff's alleged disability on three occasions. First, on January 26, 2010, Dr. Phillips prepared

18   a note indicating "her MRIs and EMGs show objective evidence for nerve damage," and found

19   she "appears to be disabled until further notice, the issue being rehabilitation potential." AR 441.

20   Next, on February 2, 2010, Dr. Phillips completed a documentation request form for the

21

22

23

24

---

[4] Plaintiff objects to the ALJ describing Mr. Surette's opined limitations as a "complete ban on exertional and postural activities, including walking" Dkt. 15, p. 6.  Although it is true that Mr. Surette did not expressly state plaintiff was completely banned from all exertional and postural activities, the ALJ clearly was aware of the specific limitations Mr. Surette assessed (*see* AR 29), and plaintiff has failed to show what harm, if any, the ALJ's use of the phrase "complete ban" caused.

ORDER AFFIRMING DEFENDANT'S DECISION
TO DENY BENEFITS - 9

Washington State Department of Social and Health Services ("DSHS"), on which he indicated

the plaintiff was unable to "lift, climb, stand, [and] stoop," for more than zero hours per week.

AR 436.  Finally, in June, 2010, Dr. Phillips prepared a short, hand-written note stating plaintiff

"seems completely disabled re-gainful employment," citing "positive evidence on her c-spine

MRI and EMGs" AR 481.

The ALJ discredited Dr. Phillips' January and June, 2010 notes for the following reasons:

> First, such a statement [that she "appears to be disabled"]—without discussion of
> actual functioning—is a legal opinion, not a medical one, and is reserved to the
> commissioner. Second, the objective evidence on which the doctor relied did not
> support such a finding. For example, on examination the day he made of [sic] the
> first statement, the doctor observed that the claimant had reported some
> improvement after ESI and that the electrodiagnostic studies showed only slightly
> positive denervation. [AR 511.] Additionally, as noted, the claimant returned to
> full-time employment for 8 months after these statements of alleged disability,
> without any significant change in functioning noted in or evident from the
> treatment records. The undersigned finds insufficient objective evidence to
> support the conclusory declarations of disability and gives these statements by Dr.
> Phillips very little weight.

AR 30. Plaintiff argues none of these reasons are sufficient to reject the opinion of a treating

physician; instead, plaintiff argues Dr. Phillips' opinion should be given controlling weight. The

Court disagrees. First, as discussed more fully in Section III, below, plaintiff worked full-time

between June, 2011 and February, 2012 as a photographer and manager of a portrait studio, a job

considered "light work" under the physical exertion levels. *See* 20 C.F.R. § 303.1567(b); AR 28,

54-55, 80, 319, 326, 329-346, 418. This is inconsistent with Dr. Phillips' opinion that plaintiff is

"completely disabled re-gainful employment." AR 481.[5]

Second, both of Dr. Phillips' written opinions were brief, conclusory, and unaccompanied

---

[5] Plaintiff argues the ALJ failed to consider the fact plaintiff only took the job out of "sheer desperation." Dkt. 15, p. 7, AR 71-72. However, the ALJ specifically acknowledged plaintiff worked "when the family really needed the money." AR 28. Nor has plaintiff explained how the fact that the reason plaintiff was able to return to work out of a desperate need for money, takes away from the fact that she was able to return to work and continue working for a significant period of time despite her allegedly disabling impairments.

by analysis of the medical evidence. *See Batson*, 359 F.3d at 1195. *See also McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011). Third, plaintiff is correct when she argues that the treatment note cited by the ALJ, in addition to reflecting improvement after an epidural steroid injection and only slightly positive denervation in an electrodiagnostic study, also reflected she had some pain, decreased range of motion and a positive straight leg raise test. *See* AR 511. However, even assuming this was error, in light of the ALJ's other valid reasons for discounting Dr. Phillips' opinion discussed above, any such error is harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (error is harmless so long as there remains substantial evidence supporting ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion).

In addition to the foregoing reasons, the ALJ also discredited Dr. Phillips' assessed limitations due to an internal inconsistency. *See* AR 30. Specifically, Dr. Phillips indicated plaintiff would be unable to lift, climb, stand, or stoop for more than zero hours. *See* AR 436. This effectively would prohibit her from performing any work whatsoever. However, on the next page of the DSHS form he completed, Dr. Phillips indicated plaintiff would be limited to sedentary work, which was described on the form as requiring an individual to be "able to lift 10 pounds maximum," "frequently lift or carry such articles as files and small tools," and "sitting, walking, and standing for brief periods." AR 437. This is a material inconsistency in Dr. Phillips opinion, and the ALJ was entitled to rely upon it in discrediting his assessed limitations. *See Morgan*, 169 F.3d at 603.

C. Richard Coder, Ph.D.

The ALJ considered and rejected the opinion of examining psychologist, Richard Coder, Ph.D. *See* AR 15-16. In evaluating Dr. Coder's opinion, the ALJ observed: "the claimant did not consistently complain of depression and anxiety or memory problems," and agreed that her pain

1   complaints "could affect concentration, memory, or focus, but [that] she did not testify to

2   problems in these areas at either hearing." AR 16. The ALJ also rejected Dr. Coder's opinion

3   because plaintiff failed to pursue mental health treatment. *See id.*

4         Plaintiff argues these reasons for discrediting Dr. Coder's opinion were factually

5   inaccurate. At her first hearing, plaintiff did suggest that her memory was getting "really bad"

6   when she attempted to recall the date she resumed work, and that her pain could interfere with

7   her concentration. AR 95, 106. In addition, the record reflects plaintiff took medication for

8   situational anxiety and depression. *See* AR 667, 681. Even if the ALJ erred here, however, that

9   error was harmless, given that he also offered several other specific and legitimate reasons for

10   rejecting Dr. Coder's opinion.

11         For example, the ALJ noted the fact that plaintiff resumed work at a skilled job as a

12   manager and photographer at a portrait studio after Dr. Coder's evaluation, and observed that

13   photography was an activity requiring concentration. *See* AR 16-17, 28, 54-55, 80, 319, 326,

14   329-346, 418. The ALJ also correctly noted plaintiff denied mental health symptoms to providers

15   and testified that her prior history of mental health issues would not be a barrier to employment.

16   *See* AR 16-17, 56, 665-681. Plaintiff does not challenge these reasons for discrediting Dr.

17   Coder's opinion. *See Paladin Associates., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1164 (9th

18   Cir. 2003) (by failing to make argument in opening brief, objection to district court's grant of

19   summary judgment was waived).

20       D.   Thomas Clifford, Ph.D., and Bruce Eather, Ph.D.

21         The ALJ considered the opinions of Thomas Clifford, Ph.D., and Bruce Eather, Ph.D.,

22   indicating the plaintiff had mild to moderate impairments, and possible difficulty with detailed

23   tasks and adjustment to a stressful workplace situation as a result of her mental health issues. *See*

24

1    AR 17-18, 587-603, 648. The ALJ discredited these opinions because the plaintiff was "not as

2    limited as found by the state agency consultants." AR 18. In support of this conclusion, the ALJ

3    cited the fact that plaintiff returned "to a full-time, skilled job in mid-2011." AR 18.

4           Plaintiff argues, in a conclusory fashion, that this was not a legitimate reason to discredit

5    Dr. Clifford and Dr. Eather's opinion for the periods of time in which she was not working.

6    However, subsequent developments in a claimant's medical and treatment history can undermine

7    a previous medical conclusion. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Plaintiff has not

8    demonstrated how the medical evidence in the record postdating Dr. Clifford and Dr. Eather's

9    review supports their opinions, especially in light of plaintiff's subsequent return to work and the

10   ALJ's other findings, including the rejection of Dr. Coder's opinion. Thus, the ALJ reasonably

11   discredited Dr. Clifford and Dr. Eather's opinions.

12          E.   Robert Hoskins, M.D.

13          Plaintiff contends the ALJ erred by giving too much weight to the opinion of state agency

14   medical consultant, Robert Hoskins, M.D. Specifically, plaintiff argues Dr. Hoskins' opinion is

15   inconsistent with the medical evidence in the record, his review was incomplete as he was only

16   able to review medical records through June 2010, he merely affirmed the report of a non-

17   physician, Michael Sherrill, and as a non-examining physician, his opinion was entitled to less

18   weight than the opinions of the treating physicians in the record.

19          Plaintiff fails to state how Dr. Hoskins' opinion is inconsistent with the medical evidence

20   in the record. *See Paladin*, 328 F.3d at 1164. In addition, as discussed above, the ALJ provided

21   specific, legitimate reasons for discrediting the more restrictive opinions of Dr. Phillips and Mr.

22   Surrette. As noted by the ALJ and discussed above, furthermore, plaintiff performed light work

23   in a full-time position between 2011 and 2012, that required frequent stooping in contrast to the

24

1  only occasional stooping assessed by Dr. Hoskins. *See* AR 30, 54-55, 80, 319, 326, 329-346,

2  418, 488, 570, 637; *Tonapetyan,* 242 F.3d at 1149 (*citing Magallanes,* 881 F.2d at 752); *Mitchell*

3  *v. Colvin,* 584 Fed.Appx. 309, 311 (9th Cir. 2014) (*citing Smolen,* 80 F.3d at 1285, *and Young v.*

4  *Heckler*, 803 F.2d 963, 968 (9th Cir. 1986).  In addition, by affirming the findings of Michael

5  Sherrill, a non-physician, Dr. Hoskins in effect was adopting them as his own.[6] Finally, plaintiff

6  has failed to demonstrate how the medical evidence in the record post-dating Dr. Hoskins'

7  review would call his opinion into question. A review of the medical evidence across the whole

8  record actually lends support to his opinion that the plaintiff is "capable of light level activity."

9  AR 488, 530-31, 570, 610, 637. As such, plaintiff's objections to the ALJ's reliance on Dr.

10  Hoskins' opinion are without merit.

11  III.     The ALJ's Assessment of Plaintiff's Credibility

12          Questions of credibility are solely within the control of the ALJ. *See Sample*, 694 F.2d at

13  642. The Court should not "second-guess" this credibility determination. *Allen*, 749 F.2d at 580.

14  In addition, the Court may not reverse a credibility determination where that determination is

15  based on contradictory or ambiguous evidence. *See id.* at 579. That some of the reasons for

16  discrediting a claimant's testimony should properly be discounted does not render the ALJ's

17  determination invalid, as long as that determination is supported by substantial evidence.

18  *Tonapetyan* , 242 F.3d at 1148.

19          To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent

20  reasons for the disbelief." *Lester*, 81 F.3d at 834 (citation omitted). The ALJ "must identify what

21  testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also*

22  _____

23  [6] Non-physicians, such as physician's assistants or nurses, can render opinions which are subsequently ratified by a doctor without compromising the validity of the doctor's status as an acceptable medical source. *See Gomez v.*

24  *Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996); *see also Xiong v. Astrue*, 2010 WL 3715135, *5-*6 (E.D. Ca. 2010).

1   *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the

2   claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear

3   and convincing." *Lester*, 81 F.2d at 834. The evidence as a whole must support a finding of

4   malingering. *See O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003).

5        In determining a claimant's credibility, the ALJ may consider "ordinary techniques of

6   credibility evaluation," such as reputation for lying, prior inconsistent statements concerning

7   symptoms, and other testimony that "appears less than candid." *Smolen*, 80 F.3d at 1284. The

8   ALJ also may consider a claimant's work record and observations of physicians and other third

9   parties regarding the nature, onset, duration, and frequency of symptoms. *See id.*

10        The ALJ in this case discounted plaintiff's credibility in part because her subjective

11   complaints were inconsistent with the objective medical evidence in the record. This was proper.

12   *See Regennitter v. Commissioner of Social Security Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998).

13   As the ALJ found, the record reflects plaintiff was able to work continuously until March of

14   2009, despite plaintiff's history of degenerative disc disease dating back as far as 2004. *See* AR

15   20, 27, 381, 446. In addition, the record reflects negative findings in numerous straight leg raise

16   tests, normal gait in all examinations after April 2010, and normal strength findings throughout

17   the relevant period. *See* AR 434, 488, 570-71, 637, 652-54, 671. Finally, as discussed in Section

18   II above, the plaintiff has failed to demonstrate any error in the ALJ's evaluation of the medical

19   opinion evidence. Taken as a whole, the objective medical evidence in the record supports the

20   ALJ's conclusion that plaintiff experienced significant improvement in her pain symptoms

21   within twelve months after her alleged disability onset date. AR 27.

22        Plaintiff contends the ALJ's reading of the medical record was selective and identifies

23   several items in the record she believes require a different interpretation. However, the ALJ

24

1   thoroughly considered and weighed all the evidence cited by plaintiff, and her evaluation is

2   supported by the overall record. AR 18-31, 638, 648, 654, 707-08. To the extent that the

3   evidence in the record is subject to more than one interpretation, furthermore, the ALJ's

4   interpretation thereof was rational and reasonable, and therefore the Court must uphold it. *See*

5   *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (court may not "second-guess" an ALJ's

6   reasonable interpretation, provided it is supported by substantial evidence).

7         Plaintiff also argues the ALJ's reliance on the lack of objective medical evidence to

8   discredit her subjective symptom testimony was legal error. However, while the ALJ could not

9   rely *solely* on the lack of objective medical evidence to discredit plaintiff, "the medical evidence

10  is still a relevant factor in determining the severity of [her] pain and its disabling effects."

11  *Rollins*, 261 F.3d at 857. Though Plaintiff argues the ALJ's credibility determination was

12  premised solely upon the fact that the objective evidence did not establish "the degree of

13  symptoms and limitations" alleged, the ALJ, in fact, relied upon multiple credibility factors,

14  discussed below, in addition to the lack of objective medical evidence.

15        In addition to inconsistencies with the objective medical evidence, the ALJ also

16  considered inconsistencies in the plaintiff's reports to her treating and examining physicians. *See*

17  *Smolen*, 80 F.3d at 1284 (ALJ may consider prior inconsistent statements). For example, the ALJ

18  cited numerous reports where plaintiff reported pain between eight and ten on the ten-point pain

19  scale, without exhibiting any acute distress. *See, e.g.*, AR 29, 570, 637, 656, 659-60. Further, at

20  various points throughout the record, plaintiff indicated treatments such as epidural steroid

21  injections were effective at alleviating her pain symptoms. *See* AR 488, 570, 637. Nonetheless,

22  despite reporting pain at the high end of the pain scale, plaintiff declined to receive a third

23  epidural steroid injection "until if and when her pain gets worse." AR 570. The ALJ also noted

24

1   that while the plaintiff testified she frequently fell, the medical records do not reflect a

2   contemporaneous report of falling after December, 2009. *See* AR 31, 119. Instead, the records

3   reflect plaintiff denied falls to separate providers in July, 2009 and December, 2012. *See* AR

4   549, 670-71.

5        The ALJ further discounted plaintiff's credibility because of her failure "to comply with

6   conservative [treatment] recommendations other than medication management" and her failure

7   "to pursue physical therapy even after requesting it." AR 27. This, too, was a valid basis for

8   finding plaintiff to be less than fully credible. *See Fair*, 885 F.2d at 603 (failure to assert good

9   reason for not following prescribed course of treatment "can cast doubt on the sincerity of the

10  claimant's pain testimony"). Plaintiff was discharged from physical therapy in August 2009,

11  after she stopped scheduling appointments and repeatedly failed to return phone calls from the

12  therapist. AR 21, 537. In addition, after agreeing to resume physical therapy in April of 2010,

13  plaintiff failed to attend her sessions and was again discharged in June 2010. *See* AR 23, 627,

14  632. The ALJ also cites to several instances where plaintiff declined certain pain medications,

15  failed to take her medication regularly, or abruptly stopped seeking treatment for months at a

16  time. *See* AR 24, 68-69, 105-06, 657.

17       Plaintiff contends she had good reasons for failing to pursue certain treatment avenues;

18  namely, the side effects of certain medications prescribed for her pain, as well as a lack of

19  insurance for physical therapy. *See* AR 62. However, the ALJ expressly considered and

20  discredited both of these reasons. *See* AR 24, 29. The ALJ observed the medical records, apart

21  from "incidental mentions of skin rash," do not reflect that plaintiff ever complained about the

22  majority of medication side effects she described during her testimony. *See* AR 25, 62. As for

23  plaintiff's inconsistent physical therapy, the ALJ acknowledged plaintiff's argument that she

24

1    lacked insurance for such treatment, but also noted plaintiff failed to seek treatment for her back

2    impairments during the nearly nine-month period in which she was employed full-time between

3    June 2011 and February 2012. AR 24. The ALJ also noted plaintiff's testimony at the first

4    hearing that she did not pursue steroid injections because of lack of insurance was inconsistent

5    with her reports to Douglas Taylor, M.D., that her pain was sufficiently relieved and that she

6    preferred to wait until her pain had increased, as well as her claims of potential side effects. *See*

7    AR 29, 104-05, 570. Thus, the ALJ did not err here.

8         Plaintiff argues the ALJ erred in discounting her credibility due to her activities of daily

9    living. Plaintiff correctly observes that activities of daily living may only be used to discredit a

10    claimant if they are inconsistent with the claimant's testimony, or "meet the threshold for

11    transferable work skills." *Orn*, 495 F.3d at 639; *Smolen*, 80 F.3d at 1284, n. 7. During the

12    relevant time period, the plaintiff performed a variety of household chores, cared for her

13    grandchildren and ill family members, and engaged in a variety of hobbies, including arts and

14    crafts, sewing, and photography. *See* AR 28, 59-60 363-70. While the ALJ cites to these

15    activities for the proposition that the plaintiff was not as limited as she alleged, the ALJ fails to

16    explain which activities are allegedly inconsistent with which limitations, or otherwise explain

17    *how* those activities are inconsistent with plaintiff's stated limitations. AR 28, *Burrell v. Colvin*,

18    775 F.3d 1133, 1138 (9th Cir. 2014). If the ALJ intended to rely upon these activities as the basis

19    for an adverse credibility determination, she was obligated to provide specific findings

20    concerning how they are inconsistent with plaintiff's stated abilities or are transferable to a work

21    setting. *Burrell*, 775 F.3d *at* 1138.

22         If this were the extent of the ALJ's analysis of plaintiff's daily activities, the Court would

23    be required to conclude the ALJ erred. Significantly, however, the ALJ also relied upon the fact

24

ORDER AFFIRMING DEFENDANT'S DECISION
TO DENY BENEFITS - 18

1  that plaintiff worked for nine months full time during the relevant time period in a portrait studio

2  managing employees, working with customers, taking portraits, and coordinating special events.

3  *See* AR 28, 54-55, 80, 319, 326, 329-346, 418. The ALJ properly relied upon this work activity

4  as evidence that plaintiff "demonstrate[d] a level of functioning that is inconsistent with her

5  claims." AR 28.

6       Plaintiff, citing *Lingenfelter v. Astrue*, argues the ALJ improperly relied on the plaintiff's

7  work activity between June 2011 and February 2012 to discredit her testimony. *Lingenfelter*,

8  however, is distinguishable on its facts. In that case, the claimant was fired from a job he had

9  performed for a period of nine weeks after his date last insured, "because he was too slow to do

10 the work adequately." *Id*. at 1033. The claimant also testified that "when he returned home from

11 work each day his 'feet were so swollen,' and that he 'just couldn't do it anymore' because of the

12 pain." *Id*. (quoting plaintiff). The Ninth Circuit stated that the mere "fact that a claimant tried to

13 work for a short period of time and, because of his impairments, *failed*," does not mean "that he

14 did not then experience pain and limitations severe enough to preclude him from *maintaining*

15 substantial gainful employment." *Id*. at 1038 (emphasis in original). The Court of Appeals found

16 this reason to be "especially unconvincing" where the claimant attempted to work "only because

17 of extreme necessity," because "[u]nder these circumstances," it was "at least as likely that the

18 claimant tried to work in spite of his symptoms, not because they were less severe than alleged."

19 *Id*. at 1038-39 (quoting ALJ).

20      In this case, plaintiff worked for nearly nine months during the relevant time period,

21 rather than for a "short period of time" after the date last insured as in *Lingenfelter*. Plaintiff –

22 rather than being fired from her job – was receiving greater responsibilities from her employer,

23 indicating she was capable of performing the job duties for which she was hired. *See* AR 28, 71-

24

72. Though the plaintiff represented she quit the job due to the work becoming "too much" (AR 101-02), there is no evidence in the record suggesting her work performance declined to the point she was unable to do work inconsistent with the ALJ's RFC assessment. Moreover, under the Commissioner's rulings, "[substantial gainful activity]-level work lasting more than 6 months cannot be a [unsuccessful work attempt] regardless of why it ended or was reduced to the non-[substantial gainful activity] level." SSR 84-25, 1984 WL 49799.[7]  Consequently, the ALJ was entitled to consider plaintiff's work history in evaluating her credibility about the impact of her pain on her limitations and her ability to work.

IV.    The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Id.* at 512. The ALJ also may "draw inferences logically flowing from the evidence." *Sample*, 694 F.2d at 642.

Plaintiff argues, in a conclusory fashion, that the ALJ failed to provide germane reasons for discrediting the testimony of her husband, Vince Kirchoff. However, the ALJ clearly and exhaustively reviewed Mr. Kirchoff's testimony, and provided germane reasons for discrediting

---

[7] Even if as plaintiff argues her work between May 2011 and February 2012, could be considered a "trial work period" (*See* 20 C.F.R. § 404.1592(a)), the ALJ was still entitled to consider this work period as part of an analysis of plaintiff's credibility. *See* 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."); *see also Greger v. Barnhart,* 464 F.3d 968, 972 (9th Cir. 2006); *Goff v. Barnhart,* 421 F.3d 785, 792 (8th Cir. 2005).

it. *See* AR 31. The ALJ specifically noted many of the limitations and symptoms articulated by

Mr. Kirchoff went unreported to plaintiff's providers, and in some cases were directly

contradicted by the medical records. *See* AR 31, 549, 670-71 (discussing plaintiff's inconsistent

reports of falling). Inconsistencies between a lay witness' testimony and the medical records is a

germane reason for discrediting the lay witness. *Valentine*, 574 F.3d at 694, *Bayliss,* 427 F.3d at

1218, *Lewis,* 236 F.3d at 511. Because the ALJ supported his credibility determination with a

germane reasons, she did not err.

V.    <u>The ALJ's Assessment of Plaintiff's Residual Functional Capacity</u>

If a disability determination "cannot be made on the basis of medical factors alone at step

three of the evaluation process," the ALJ must identify the claimant's "functional limitations and

restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p,

1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to

determine whether he or she can do his or her past relevant work, and at step five to determine

whether he or she can do other work. *See id.* It thus is what the claimant "can still do despite his

or her limitations." *Id.*

A claimant's residual functional capacity is the maximum amount of work the claimant is

able to perform based on all of the relevant evidence in the record. *See id.* However, an inability

to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ

must consider only those limitations and restrictions "attributable to medically determinable

impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the

claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be

accepted as consistent with the medical or other evidence." *Id.* at *7.

Plaintiff argues, in conclusory fashion, that the ALJ's residual functional capacity

1   determination is flawed as it did not include all of the limitations associated with all of the

2   plaintiff's severe impairments, and instead should have included all of the limitations both she

3   and her doctors articulated. However, as discussed in Sections II, III and IV, above, the ALJ

4   properly discounted plaintiff's credibility, properly weighed the medical evidence, and properly

5   evaluated the plaintiff's impairments. Thus, there was no error in the ALJ's assessed residual

6   functional capacity, as it included all of the plaintiff's credible limitations.

7   VI.    The ALJ's Findings at Step Five

8          If a claimant cannot perform his or her past relevant work, at step five of the disability

9   evaluation process the ALJ must show there are a significant number of jobs in the national

10  economy the claimant is able to do. *See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999);

11  20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a

12  vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids").

13  *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101.

14         An ALJ's findings will be upheld if the weight of the medical evidence supports the

15  hypothetical posed by the ALJ. *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987);

16  *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony

17  therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *See*

18  *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the

19  claimant's disability "must be accurate, detailed, and supported by the medical record." *Id.*

20  (citations omitted). The ALJ, however, may omit from that description those limitations he or

21  she finds do not exist. *See Rollins*, 261 F.3d at 857.

22         At the hearing, the ALJ posed a hypothetical question to the vocational expert containing

23  substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual

24

functional capacity. *See* AR 81-82. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. *See* AR 80-82. Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. *See* AR 31-33.

Plaintiff does not challenge the vocational expert's testimony that a person with limitations substantially identical to those articulated in the ALJ's residual functional capacity assessment would be able to perform jobs that exist in significant numbers in the national economy. Instead, she challenges the use of the ALJ's residual functional capacity assessment as the basis for the ALJ's hypothetical to the vocational expert. However, as discussed above, the ALJ's residual functional capacity assessment properly included all of plaintiff's credible limitations. Thus, the ALJ's hypothetical to the vocational expert was proper, and the ALJ was entitled to rely on the vocational expert's testimony in finding as he did concerning the number of other jobs existing in significant numbers in the national economy plaintiff could do.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court hereby finds the ALJ properly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is AFFIRMED.

Dated this 2nd day of September, 2015.

Karen L. Strombom
United States Magistrate Judge